Tom, J.E (dissenting).
The Court of Appeals remanded this matter to the motion court for a framed issue hearing to determine whether the words of regulation 12 NYCRR 23-2.2 (a) “can sensibly be applied to anything but completed forms” (9 NY3d 47, 51 [2007]). After the hearing, I find that section 23-2.2 (a) applies only to completed forms and has no application in this case where only one wall of a form was erected when it fell on plaintiff.
The provisions of Industrial Code (12 NYCRR) § 23-2.2 are limited in application to completed forms and to ongoing and completed concrete pours. Thus, section 23-2.2 (a) can only be read to apply to fully-assembled concrete forms. Section 23-2.2 is entitled “Concrete work.” The provision at issue, subdivision (a), entitled “General requirements,” states as follows: “Forms, shores and reshores shall be structurally safe and shall be properly braced or tied together so as to maintain position and shape.” As defined in the Guide to Formwork for Concrete (defendant’s exhibit A) and by defendant’s expert, shores are horizontal supports used to bear the dead load of the form and concrete when a floor is poured, while reshores are used to support the poured floor as it cures — before the concrete acquires its full strength — including any load caused by shores or reshores supporting the floors above. Thus, these terms are not immediately related to the question before us.
*844 The Court of Appeals has already ruled that the phrase “structurally safe” and the term “properly” are too vague to afford a basis for recovery under Labor Law § 241 (6), and while the remainder of 12 NYCRR 23-2.2 (a) — “braced or tied together so as to maintain position and shape” — is suitably specific (9 NY3d at 50), there remains the question of whether that language “can sensibly be applied to anything but completed forms” {id. at 51). The issue is whether the requirement for braces or ties “to maintain position and shape” applies to the period during which forms are being assembled (when plaintiff sustained injury) or whether application of this language is limited to the period during which concrete is actually poured and thereafter (when the form is fully assembled).
The regulation indicates the latter interpretation is correct. Industrial Code (12 NYCRR) § 23-2.2 (b), entitled “Inspection,” provides: “Designated persons shall continuously inspect the stability of all forms, shores and reshores including all braces and other supports during the placing of concrete. Any unsafe condition shall be remedied immediately.” That inspection is required “during the placing of concrete” strongly suggests that the protections provided by subdivisions (a) and (b) of section 23-2.2 are intended to apply to the structural integrity of concrete forms at such time concrete is being poured. Following subdivisions include requirements for the support of newly poured concrete and the stripping of forms. Thus, section 23-2.2 addresses the need to adequately support concrete during and after its placement, and such matters as the manner in which forms are assembled and their support during assembly are not covered.
The expert testimony is consistent with this interpretation. Asked to define the term “form,” plaintiffs expert responded: “A form is an assembly of all kinds of components, form panels, wailer [sic] tie[s] and other components, connections, that are put together by the contractor to form the shape of a wall, and make sure that it is — they are safe during the placement of the concrete until the concrete changes it’s [sic] strength, increases the strength and changes from being a liquid to solid.” An exhibit submitted by defendant, the American Concrete Institute’s Guide to Formwork for Concrete, contains a more concise definition: “A temporary structure or mold for the support of concrete while it is setting and gaining sufficient strength to be self-supporting.” Defendant’s expert also defined the term “tie,” stating: “A tie in our particular case is usually a steel rod, about a quarter of an inch diameter . . . that ties together two vertical wall panels and the reason you have a tie is . . . the wet *845 concrete has a tendency to spread the forms, so they introduce ties to tie the vertical panels together to hold them in place.” Here, only one side of the form was erected when the accident occurred. Thus, the application of a tie would be irrelevant under the facts of this case.
That the focus of Industrial Code (12 NYCRR) § 23-2.2 (a) is the structural integrity of the form during the placement of concrete is evident from its language, particularly the provision that the position and shape of the form be maintained by ensuring that it is “braced or tied together.” While a requirement to brace a form could be extended to include the support of the single vertical wall panel that fell and injured plaintiff, the alternative to utilize ties to accomplish the same purpose can only be applied to a pair of such panels. Likewise, the requirement to maintain the position of a form could apply to a single vertical panel, but the additional requirement that the shape of the form be maintained clearly anticipates the need to provide sufficient support to withstand the considerable force exerted by wet concrete. Only two panels could provide such support. The testimony of plaintiffs own expert supports this interpretation. Indeed, he explained that ties were placed between the walls of a form “to keep it from blowing out and [to] keep it straight.”
The majority attaches undue significance to the experts’ opinions concerning the construction of forms. Their testimony was solicited to obtain “the meaning of specialized terms” used in the regulation; the interpretation of the regulation remains a matter of law for the courts (9 NY3d at 51). That an expert may opine that forms should be braced during assembly to resist wind loads has no bearing on whether the regulation at issue requires as much.
Accordingly, the order should be affirmed and the complaint dismissed.